USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_________________
DATE FILED: 10/13/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

SILVER LEAF PARTNERS, LLC,

Plaintiff,

-v-

EDUARDO JURADO, et al.,

Defendants.

---------------------------------------------------------------------X

26-cv-4514 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendants Eduardo Jurado ("Jurado"), Javier Echeverria ("Echeverria" and with Jurado, the "Individual Defendants"), South Ecuameridian International, S.A. ("SEI")[1], and Tropical Holding Investments Association, Inc. ("Tropical Holding" and with SEI, the "Entity Defendants") (collectively, "Defendants") move, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), to dismiss the Second Amended Complaint ("SAC") of Plaintiff Silver Leaf Partners, LLC ("Plaintiff" or "Silver Leaf"). Dkt. No. 70. Plaintiff also moves for the entry of a preliminary injunction and permanent injunction. Dkt. No. 50.

For the reasons that follow, Defendants' motion is granted and Plaintiff's motion is denied.

**BACKGROUND**

For purposes of this motion, the Court accepts as true the well-pleaded allegations of the SAC as supplemented by the documents incorporated by reference or of which the Court may take judicial notice.

[1] Plaintiff also refers to SEI as South Ecuameridian International, S.A. Dkt. No. 56 ¶ 13. The Court refers to it as SEI.

Silver Leaf is a registered broker-dealer and member firm of the Financial Industry Regulatory Authority, Inc. ("FINRA"), organized and operating in New York. Dkt. No. 56 ¶¶ 2, 6, 10, 18.

SEI and Tropical Holding are stated to be Panamanian corporations. *Id.* ¶¶ 13–14. Jurado and Echeverria are Ecuadorian investors. *Id.* ¶¶ 11–12. Jurado's father is Dr. Eduardo X. Jurado Bejar ("Bejar"). *Id.* ¶ 26.

Non-party Gustavo Dolfino ("Dolfino") was a registered associated person of Silver Leaf. *Id.* ¶ 18. Dolfino conducted business with certain of the Defendants for a business, Student Global, that he managed. *Id.* ¶ 18. Student Global was an educational start-up organized as a limited liability company under the laws of New York. *Id.* ¶ 23.

SEI (through Bejar) entered into an investment subscription agreement with Student Global on February 4, 2016, and Tropical Holding (through Echeverria) entered into an investment subscription agreement with Student Global on March 27, 2017. *Id.* ¶¶ 11, 23, 52, 61.[2] The investments were structured as Regulation S offshore securities offerings exempt from registration under the Securities Act of 1933 (the "Securities Act"). *Id.* ¶¶ 22, 54. The subscription agreements contained mandatory forum selection clauses expressly designating New York courts as the exclusive forum for the resolution of all disputes arising from or relating to the agreements. *Id.* ¶¶ 24, 53.[3]

---

[2] Plaintiff elsewhere alleges that the "investments" occurred in or around March 2017 or February 2016. *Id.* ¶¶ 23, 48.
[3] The provision states in relevant part as follows:

> THE PURCHASER AND THE COMPANY HEREBY IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF ANY NEW YORK STATE OR FEDERAL COURT SITTING IN THE STATE OF NEW YORK, COUNTY OF NEW YORK IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THE UNITS OR THIS AGREEMENT, AND THE PURCHASER

On October 15, 2024, the United States Securities and Exchange Commission issued an order instituting proceedings against Dolfino on a "neither admit nor deny" basis regarding certain matters related to Student Global. *Id.* ¶ 20; *see In the Matter of Gustavo Dolfino*, Order Instituting Administrative and Cease-and Desist Proceedings ("OIP"), Administrative Proceeding File No. 3-22254, available at https://www.sec.gov/files/litigation/admin/2024/33-11318.pdf.[4] The SEC charged that Dolfino, from 2016 to 2022, in his capacity as founder and Chief Executive Officer of Student Global, raised approximately $20.6 million from investors by making material misrepresentations concerning his background and prior entrepreneurial success, his own investment in Student Global, and his net worth. OIP at 2. The SEC charged Dolfino with violations of Section 17(a) of the Securities Act and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. *Id.* ¶ 30. The SEC ordered Dolfino to pay disgorgement of $5,110,500, prejudgment interest of $646,377, and a civil monetary penalty of $500,000, to cease and desist from committing or causing any violations or future violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and barred him from association with any registered broker-dealer. *Id.* at 7.

On November 21, 2025, Jurado and Echeverria, acting for SEI and Tropical Holding respectively ("Claimants"), filed a Statement of Claim with FINRA Dispute Resolution Services

---

> AND THE COMPANY HEREBY IRREVOCABLY AGREE THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING SHALL BE HEARD AND DETERMINED IN SUCH NEW YORK STATE OR FEDERAL COURT.

Dkt. No. 35-25 § 19.

[4] The OIP is referred to in the SAC and incorporated by reference. The Court also takes judicial notice of it for the fact of its findings but not for the truth of those findings. *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 354 n.5 (2d Cir. 2010) (taking judicial notice of "the full contents of the SEC's filings" relating to enforcement action).

("FINRA DRS") initiating FINRA Arbitration No. 25-02595. Dkt. No. 56 ¶¶ 2, 28, 48. The Statement of Claim, which is incorporated by reference, asserts that SEI and Tropical Holding had sustained damages of $800,000 as a result of their investment in Student Global and that the two were induced to make the investments as a result of material misstatements by Dolfino while he was employed with Silver Leaf. Dkt. No. 70-2 ¶¶ 1, 26, 28–30, 35–36, 38. The Statement of Claim alleges that Dolfino's conduct constitutes "selling away," a securities violation that occurs when a financial advisor sells or solicits investments not approved by their employing brokerage firm, and that Silver Leaf violated its duties to investors by failing to supervise Dolfino. *Id.* ¶¶ 1–4. The Statement of Claim asserts claims for (1) breach of fiduciary duty and failing to act in the investor's interests, to deal fairly and honestly with the investor, to observe fair business practices and principles of trade as embodied in the standards of the securities industry and the Rules of FINRA and Respondents' own internal policies, to make only suitable investment recommendations to the investor and not to knowingly or negligently make material misrepresentations and omissions to the investor; (2) failure to supervise by neglecting its duty to properly supervise and control its agents pursuant, but not limited, to Section 20(a) of the Exchange Act and FINRA Conduct Rules; (3) negligence and gross negligence; (4) misrepresentations and omissions; (5) violation of FINRA Rules; and (6) violation of federal securities laws. *Id.* ¶ 40.

On January 7, 2026, Silver Leaf signed a Submission Agreement, agreeing to abide by any award rendered in the FINRA arbitration. Dkt. No. 70-3.[5,6] The Submission Agreement states in pertinent part the following:

> 1. The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third party claims which may be asserted, to arbitration in accordance with FINRA By-Laws, Rules, and Code of Arbitration Procedure.
>
> 2. The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules.
>
> . . .
>
> 4. The parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

*Id.*

---

[5] FINRA Rule 12200 requires a member firm to arbitrate a dispute if (1) it is either required by a written agreement or requested by the customer; (2) the dispute is between a customer and a member or associated person of a member; and (3) the dispute arises in connection with the business activities of the member or the associated person.

[6] "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)). The same rule applies to filings in arbitration proceedings. *See Purjes v. Plausteiner*, 2016 WL 552959, at *4 (S.D.N.Y. Feb. 10, 2016) (collecting cases); *see also JPMorgan Chase Bank, N.A. & J.P. Morgan Sec. v. Kraus*, 2025 WL 2390853, at *5 (S.D.N.Y. Aug. 18, 2025) (determining that the court could consider a FINRA Submission Agreement in deciding a motion to dismiss because it was "integral to, if not incorporated into, the Complaint," which sought a declaration and injunction preventing the FINRA arbitration from proceeding against plaintiff, where the motion turned on whether plaintiff consented to submit the question of arbitrability to the arbitrators). The Court therefore takes judicial notice of the Submission Agreement for the fact of its filing in the FINRA arbitration.

On January 12, 2026, Plaintiff filed its Statement of Answer, Affirmative Defenses, and Counterclaims in the arbitration. Dkt. No. 70-5.[7]

On February 5, 2026, Silver Leaf filed a motion to dismiss the FINRA arbitration on all grounds including (a) non-customer status under FINRA Rule 12200 and *Citigroup Global Markets Inc. v. Abbar*, 761 F.3d 268 (2d Cir. 2014); (b) the absolute six-year time bar under FINRA Rule 12206(a); (c) the mandatory forum selection clause; (d) extraterritoriality under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010); and (e) Claimants' lack of standing and the derivative nature of all claims. Dkt. No. 56 ¶ 32. The FINRA arbitration panel denied Silver Leaf's motion to dismiss in its entirety and without prejudice on May 21, 2026. Dkt. No. 56 ¶ 32; Dkt. No. 70-4 at 3.[8] In its denial, which is incorporated by reference, the arbitral panel added: "Respondent [Silver Leaf] is specifically permitted to file the Motion to Dismiss at the evidentiary hearing in this matter." Dkt. No. 70-4 at 3. A final hearing in the FINRA arbitration is scheduled for February 1–5, 2027. Dkt. No. 56 ¶ 29.

**PROCEDURAL HISTORY**

Plaintiff initiated this case by complaint filed on May 29, 2026. Dkt. No. 1. Plaintiff also moved by proposed order to show cause for a temporary restraining order ("TRO"). Dkt. Nos. 8, 11. The Court held a hearing on the application for emergency injunctive relief on June 1, 2026, and denied the motion that day for reasons stated on the record. Dkt. No. 30.

On May 31, 2026, Plaintiff filed an amended complaint. Dkt. No. 25. On June 2, 2026, the parties submitted and the Court signed a stipulation of partial voluntary dismissal with prejudice dismissing all claims against FINRA as defendant. Dkt. No. 32.

---

[7] The Court likewise takes judicial notice of Plaintiff's Statement of Answer for the fact of its filing and not for the truth of the matters asserted therein.
[8] Citations to this docket entry use ECF pagination.

On June 8, 2026, Plaintiff filed a renewed motion for a temporary restraining order. Dkt. No. 35. The Court denied the motion for a temporary restraining order by order of June 12, 2026, indicating that it would consider the issues presented by that motion in connection with the simultaneously-filed motion for a preliminary injunction. Dkt. No. 42. The Court also granted Plaintiff leave to file a Second Amended Complaint. *Id.*

Plaintiff filed the operative Second Amended Complaint ("SAC") on June 12, 2026, and a corrected SAC on June 16, 2026. Dkt. Nos. 43–44, 56.

Plaintiff filed the motion for a preliminary injunction and a permanent injunction on June 12, 2026. Dkt. Nos. 48, 50.[9] Plaintiff also filed the declaration of Fyzul Khan attaching exhibits in support of the motion. Dkt. No. 49. Plaintiff filed a memorandum of law in support of the motion for a permanent injunction and a corrected declaration of Fyzul Khan on June 16, 2026. Dkt. Nos. 58–59.[10] On July 27, 2026, Defendants filed a memorandum of law in opposition to the motion for injunctive relief and the declaration of Donald L. Citak. Dkt. Nos. 73–74.

On July 21, 2026, Defendants filed this motion to dismiss. Dkt. No. 70. Defendants also filed a memorandum of law in support of the motion. Dkt. No. 71. On August 4, 2026, Plaintiff filed a memorandum of law in opposition to the motion to dismiss. Dkt. No. 75. Plaintiff also filed a letter on the same day bringing to the Court's attention certain "developments" that, in its

[9] By letter of June 12, 2026, Plaintiff advised that it was seeking preliminary injunctive relief to stay FINRA Arbitration No. 25-02595 pending final adjudication of this action and permanent injunctive relief following final judgment. Dkt. No. 47. Plaintiff agreed that the Court may adjudicate the motion for a preliminary injunction on the papers and stated that it would not object if the Court later elected, under Rule 65(a)(2), to consolidate the hearing with a trial on the merits. *Id.*; *see Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 101 (2d Cir. 1985) (courts have "broad discretion" under Rule 65(a)(2) to order consolidation).

[10] On July 20, 2026, Plaintiff filed a motion captioned "notice of motion for a threshold determination of the entity defendants' legal existence, capacity, and counsel's authority to appear, and for related relief." Dkt. No. 65.

view, constituted additional evidence of irreparable harm, Dkt. No. 76, which Defendants disputed by letter response dated August 7, 2026, Dkt. No. 79.[11] On August 11, 2026, Defendants filed a reply memorandum in further support of their motion to dismiss. Dkt. No. 80.

On August 12, 2026, Plaintiff filed a letter motion for leave to file a sur-reply in further opposition to the motion to dismiss. Dkt. No. 82. Defendants filed an opposition to Plaintiff's motion to file a sur-reply on the same day. Dkt. No. 83.[12]

## STANDARDS OF REVIEW

Defendants argue that the Court lacks subject matter jurisdiction over this case and personal jurisdiction over them, that the Court should abstain from a ruling in this case in favor of arbitration, and that the complaint fails to state a claim for relief. Dkt. No. 71.

A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St.*

---

[11] On August 4, 2026, Plaintiff filed corrected versions to Exhibit D of the declaration of Fyzul Khan in opposition to the motion to dismiss and to their supplemental letter filed on August 4, 2026. Dkt. No. 77. On August 7, 2026, Plaintiff filed a second supplemental letter in further support of its opposition to the motion to dismiss. Dkt. No. 78.

[12] On August 12, 2026, Plaintiff filed a corrected version of its proposed sur-reply. Dkt. No. 84. Plaintiff thereafter filed three letters without leave of Court regarding new "developments" in the underlying FINRA arbitration and in further support of its motion for a preliminary injunction. Dkt. Nos. 85–88. On August 17, 2026, the Court ordered Plaintiff to show cause as to why the Court should not disregard the filings at Dkt. Nos. 85, 87, and 88, to which Plaintiff responded on the same day, Dkt. No. 91. The Court also ordered Plaintiff to show cause as to why this action should not be dismissed for lack of subject matter jurisdiction, in light of the fact that the Declaratory Judgment Act does not supply an independent source of federal jurisdiction, FINRA's rules do not give rise to federal question jurisdiction, and Defendants in the underlying arbitration do not assert a claim under Section 10(b) of the Exchange Act. Dkt. No. 90. On August 20, 2026, Plaintiff responded that the action should not be dismissed because complete alienage jurisdiction has always existed under 28 U.S.C. § 1332(a)(2), and attached an attorney declaration establishing the jurisdictional facts, Silver Leaf's disclosure statement pursuant to Rule 7.1(a)(2), and a proposed amended jurisdictional paragraph. Dkt. No. 92. On August 28, 2026, Defendants filed a response to the Court's show-cause order arguing that Plaintiff's response did not cure the jurisdictional defect in Plaintiff's pleading. Dkt. No. 93. Plaintiff filed a reply in further support of its response to the show-cause order on August 29, 2026. Dkt. No. 94.

*Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (internal quotation marks omitted). To survive a 12(b)(1) motion to dismiss for lack of standing, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'" *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)). Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party. *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001). However, where the jurisdictional challenge is fact-based, the defendant may "proffer[] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). In that case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno*, 932 F. Supp. at 95.

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v.*

*Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). If an evidentiary hearing is not held, plaintiff need make only a prima facie showing by its pleadings and affidavits that jurisdiction exists. *Id.* at 85. This prima facie showing "must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Id.*

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

Where documents are incorporated by reference into a complaint, "the underlying documents rather than the Plaintiff's description of them govern on a motion to dismiss under Rule 12(b)(6)." *Wolet Cap. Corp. v. Walmart Inc.*, 2021 WL 242297, at *12 (S.D.N.Y. Jan. 25, 2021); *see also Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 383 (S.D.N.Y. 2020) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." (citation omitted)); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004) ("The court need not accept as true an allegation that is contradicted by the documents on which the complaint relies.").

**DISCUSSION**

The SAC asserts eight counts, each of which challenges the FINRA arbitration in one form or another. Dkt. No. 56 ¶¶ 55–92. The first six counts seek a declaratory judgment. *Id.* ¶¶ 55–82. In Count I, Plaintiff seeks a declaratory judgment that Defendants are not "customers" of Plaintiff within the meaning of FINRA Rule 12200. *Id.* ¶¶ 55–59.[13] In Count II, Plaintiff seeks a declaratory judgment that Defendants' FINRA claims are absolutely time-barred by FINRA Rule 12206(a). *Id.* ¶¶ 60–63. In Count III, Plaintiff seeks a declaratory judgment that the FINRA arbitration violates the mandatory forum selection clause in the investment agreements and that Plaintiff has no obligation to arbitrate in FINRA Arbitration No. 25-02595. *Id.* ¶¶ 64–67. In Count IV, Plaintiff seeks a declaratory judgment that all securities claims asserted or which could be asserted by Defendants in FINRA Arbitration No. 25-02595 are extraterritorially barred under the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), and that the federal securities laws do not apply to the offshore

[13] Plaintiff also alleges that Jurado did not sign any of the operative investment documents. *Id.* ¶ 58.

Regulation S investments at issue in the arbitration. *Id.* ¶¶ 68–70. In Count V, Plaintiff seeks a declaratory judgment that the Entity Defendants and, derivatively, Jurado and Echeverria, lack legal capacity under Federal Rule of Civil Procedure 17(b)(2) and Panamanian law. *Id.* ¶¶ 71–77. In Count VI, Plaintiff seeks a declaratory judgment that Jurado and Echeverria lack standing to assert claims in FINRA Arbitration No. 25-02595 in their individual capacities, that all claims in the arbitration are impermissible derivative claims, and that Plaintiff has no obligation to arbitrate any such claims. *Id.* ¶¶ 78–82. In Counts VII and VIII, Plaintiff seeks a preliminary and a permanent injunction against continuation of the FINRA arbitration. *Id.* ¶¶ 83–92.[14]

Defendants argue that the SAC should be dismissed in its entirety because (1) the Court lacks Article III jurisdiction over the case; and (2) the Court lacks personal jurisdiction over the Defendants. Dkt. No. 71 at 3–7. Defendants also argue that, even if the Court could exercise subject matter jurisdiction under Article III, it should decline to do so under the Declaratory Judgment Act ("DJA") and the SAC fails to state a claim for relief. *Id.* at 7–24.

## I. Subject Matter Jurisdiction[15]

The SAC asserts federal subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 on the theory that the "action arises under the Securities Exchange Act of 1934 and the rules of FINRA." Dkt. No. 56 ¶ 16. It also alleges that the Court has jurisdiction under 28 U.S.C. § 2201 to issue a declaratory judgment. *Id.* The DJA, however, "is not an independent source of federal jurisdiction." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). "[A] court must have subject

---

[14] Plaintiff also adds a section to the SAC entitled "Additional Relief." *Id.* ¶ 93. That section does not assert a claim for relief but merely asks that the Court authorize subpoenas on the assumption that the SAC otherwise asserts a claim for relief. *Id.* "A plaintiff who has failed adequately to state a claim is not entitled to discovery." *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 567 (2d Cir. 2016).

[15] The Court has an independent obligation to examine its own subject matter jurisdiction. *See Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006).

matter jurisdiction over a case on some other basis before it may grant declaratory or injunctive relief." *Fraternal Order of Police, Nat'l Lab. Council, USPS No. 2 v. U.S. Postal Serv.*, 988 F. Supp. 701, 705 (S.D.N.Y. 1997). And "FINRA's rules 'are established and enforced by a private association,' so they 'do not give rise to federal question jurisdiction.'" *Doscher v. Sea Port Grp. Sec., LLC*, 2015 WL 4643159, at *2 (S.D.N.Y. Aug. 5, 2015) (quoting *In re Prudential Sec. Inc.*, 795 F. Supp. 657, 659 (S.D.N.Y. 1992)), *vacated on other grounds*, 832 F.3d 372 (2d Cir. 2016)). The Court thus does not have federal question jurisdiction.[16]

In response to the Court's order to show cause why the case should not be dismissed for lack of subject matter jurisdiction, Dkt. No. 90, Plaintiff has asserted that the Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) because this is an action between citizens of a State and citizens or subjects of foreign states, and that the defect in Plaintiff's allegation of jurisdiction is curable under 28 U.S.C. § 1653. Dkt. No. 92.[17]

The Court has diversity jurisdiction over this case. Section 1332(a)(2) gives the federal district courts jurisdiction over civil actions between "citizens of a State and citizens or subjects of a foreign state" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. This action is between a citizen of a State and citizens of a foreign state. "In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). The SAC alleges that both Jurado and Echeverria are foreign nationals,

---

[16] Defendants in the underlying arbitration do not assert a claim under Section 10(b) of the Exchange Act, *see* Dkt. No. 70-2, and the Supreme Court has held that the Court cannot look through the underlying assertions in an arbitration to find a basis for federal jurisdiction when a party seeks to vacate an award of an arbitral tribunal. *See Badgerow v. Walters*, 596 U.S. 1, 5 (2022).

[17] Plaintiff does not contest that the Court lacks federal question jurisdiction. Dkt. No. 92 at 2.

Dkt. No. 56 ¶¶ 11–12, and that the Entity Defendants claim to be Panamanian corporations, *id.* ¶¶ 13–14. They thus are citizens of a foreign state. "[I]mmigrants present in the United States on a non-permanent basis are considered citizens of their home country for purposes of diversity jurisdiction." *Gousse v. Giardullo*, 2021 WL 429970, at *2 (E.D.N.Y. Feb. 8, 2021).[18] The citizenship of a limited liability company is that of the citizenship of each of its members. *See Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012); *Handelsman v. Bedford Vill. Assocs. L.P.*, 213 F.3d 48, 51–52 (2d Cir. 2000). Although the SAC does not allege the citizenship of the members of Plaintiff, *see* Dkt. No. 56 ¶ 10, Plaintiff has submitted a declaration that its sole member is Fyzul Khan, who is a citizen of the United States and is domiciled in New York. Dkt. No. 92-1 ¶¶ 2–4. Plaintiff is thus a citizen of the United States and of New York.

"The existence of federal jurisdiction over a case initially filed in federal court ordinarily depends on the facts as they stood when the complaint was filed." *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 329 (2d Cir. 2001). An adequate pleading of diversity, however, is not "itself a necessary element of diversity jurisdiction." *Id.* It "is 'merely an allegation informing the court that diversity jurisdiction independently exists.'" *Id.* (quoting *Jacobs v. Patent Enf't Fund, Inc.*, 230 F.3d 565, 567 (2d Cir. 2000)). Section 1653 permits "defective

[18] Plaintiff also has submitted evidence that Jurado and Echeverria are citizens of the Republic of Ecuador who are not citizens of the United States and who have never been lawfully admitted to the United States for permanent residence. Dkt. No. 92-1 ¶¶ 5–6. In addition, the Statement of Claim asserts that Jurado and Echeverria are citizens of Ecuador and reside in Ecuador. Dkt. No. 70-2 ¶¶ 6–7. According to Defendants' corporate disclosure statement, the Entity Defendants are corporations organized under the laws of the Republic of Panama. Dkt. No. 72; Dkt. No. 92-1 ¶ 7. *See HTI Fin. Sols. Ltd. v. Manhattan SMI KG Props. Fin. Ltd.*, 2024 WL 4452295, at *4 (S.D.N.Y. Oct. 9, 2024) (holding that the court had diversity jurisdiction on the basis of a Rule 7.1 corporate disclosure statement where the complaint did not allege the citizenship of the LLC defendants).

allegations of jurisdiction [to be] amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. The provision addresses "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Newman-Green*, 490 U.S. at 831. The Second Circuit has held that "section 1653 should be construed 'liberally to permit the action to be maintained if it is at all possible to determine from the record that jurisdiction does in fact exist.'" *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 161 (2d Cir. 1998) (quoting *John Birch Soc'y v. Nat'l Broad. Co.*, 377 F.2d 194, 198–99 (2d Cir. 1967)). A party cannot "amend its complaint to substitute a new cause of action over which there is subject-matter jurisdiction for one in which there is not." *Id.*; *see also Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 893 (2d Cir. 1983) (Section 1653 cannot be invoked "to create jurisdiction retroactively where none existed"). However, "where the facts necessary to the establishment of diversity jurisdiction are subsequently determined to have obtained all along, a federal court may simply allow a complaint to be amended to assert those necessary facts and then treat diversity jurisdiction as having existed from the beginning." *Herrick*, 251 F.3d at 329; *accord Wiener v. AXA Equitable Life Ins. Co.*, 113 F.4th 201, 212 n.8 (2d Cir. 2024) (deeming complaint to be amended pursuant to 28 U.S.C. § 1653 to allege citizenship of defendant); *Herrera v. Torres*, 2025 WL 282985, at *1 (S.D.N.Y. Jan. 23, 2025) (permitting amendment of complaint to allege the necessary facts to diversity jurisdiction that existed at the time of filing).

It is not fatal to Plaintiff's invocation of this Court's jurisdiction that the original complaint "did not assert … jurisdiction pursuant to 28 U.S.C. § 1332." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 338 F.3d 119, 125 (2d Cir. 2003) (Sotomayor, J.). "The assertion of diversity jurisdiction relates back to the commencement of the action when the

underlying facts, if properly pled, would have supported jurisdiction at the time the action commenced." *Id.*; *see also Advani*, 140 F.3d at 161 (deeming complaint amended to allege admiralty jurisdiction where original complaint contained defective allegations of diversity jurisdiction).[19]

Defendants argue that Plaintiff's jurisdictional allegations are defective because Plaintiff does not allege where Jurado and Echeverria were domiciled when the action commenced, including where the two were physically located at the time, where they were resident, and where they intended to remain. Dkt. No. 93 at 7. But alienage for purposes of diversity jurisdiction is determined by a party's citizenship and not domicile. *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020). "[A] lawful permanent resident noncitizen domiciled in a state is not considered a citizen of that state for purposes of diversity jurisdiction." *Sukar v. Ramkellawan*, 2024 WL 1131074, at *2 n.1 (E.D.N.Y. Mar. 15, 2024).[20] If Defendants were all foreign citizens, it is irrelevant to the jurisdictional analysis whether they were resident in the United States at the time of filing. Even a foreign citizen who is a permanent resident of the United States is "an alien for the purposes of diversity jurisdiction." *Tagger*, 951 F.3d at 126; *see Zhang v. Han*, 2022 WL 62154, at *2 (S.D.N.Y. Jan. 5, 2022); *Gershowitz v. Griv*, 2025 WL 2202981, at *3 (S.D.N.Y. July 1, 2025) (stating that state residency and state citizenship are not

[19] Thus, Defendants' argument that "[a] defective 'statement' of jurisdiction presupposes that the pleader attempted to invoke the basis being corrected," and that Section 1653 does not "giv[e] [Plaintiff] a second opportunity to select a different jurisdictional basis after the one it pleaded has failed," Dkt. No. 93 at 6, is mistaken.

[20] Defendants also assert that because Plaintiff argues that the Entity Defendants lack juridical status, they cannot be citizens of a foreign state and thus the Court lacks diversity jurisdiction. Dkt. No. 93 at 8. But, assuming without deciding that the Entity Defendants lack juridical status, the presence of a "non-juridical entity that cannot be sued . . . does not destroy diversity jurisdiction." *La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 97 (2d Cir. 2014). Defendants' argument thus fails for that reason as well.

synonymous), *report and recommendation adopted*, 2025 WL 2170773 (S.D.N.Y. July 31, 2025).

## II. Standing

Defendants argue that Plaintiff lacks Article III standing to complain about the arbitration. Dkt. No. 71 at 3–5. They assert that the only injury of which Plaintiff complains is its participation in the arbitration, but that Plaintiff voluntarily agreed to pay the fees for the arbitration when it signed the Submission Agreement in January 2026. *Id.* at 4. That argument too is without merit.

"Under Article III of the Constitution, the jurisdiction of federal courts is limited to the resolution of 'cases' and 'controversies.'" *Amidax*, 671 F.3d at 145 (quoting U.S. Const. art. III, § 2). "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as the 'proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (alteration in original) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). This is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006). "In order to have standing to bring suit, a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Plaintiff has properly alleged standing with respect to all claims except Count IV.[21] Plaintiff alleges that, as a result of Defendants' Statement of Claim, Plaintiff is being forced to arbitrate in, expend resources on, pay a fee for, and face an award from, an arbitral panel to which Plaintiff did not consent. Dkt. No. 56 ¶¶ 6, 33. The required presence of Plaintiff in the arbitration, lest it risk sanctions for failure to participate or an award being entered against it in absentia, imposes "'a here-and-now injury.'" *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 191 (2023) (quoting *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 212 (2020)). A party suffers injury when it "'is forced to arbitrate a dispute that is not subject to arbitration.'" *In re Celsius Network LLC*, 2023 WL 8097021, at *2 (S.D.N.Y. Nov. 20, 2023) (quoting *Pike Co., Inc. v. Tri-Krete Ltd.*, 349 F. Supp. 3d 265, 272 (W.D.N.Y. 2018)). The injury here is concrete and particularized. Plaintiff has been forced to devote "time and resources" to a proceeding which it claims is ultra vires. *See Maryland Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 985 (2d Cir. 1997). For the same reasons, the injury

[21] Count IV seeks a declaratory judgment that "[t]o the extent Defendants assert claims under Section 10(b) of the Securities Exchange Act of 1934, Section 17(a) of the Securities Act of 1933, or any other provision of the federal securities laws, those claims are barred by the extraterritoriality principle established in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010)." Dkt. No. 56 ¶ 69. The Statement of Claim refers generally to an alleged "violation of federal securities laws" and, separately, to Section 20(a) of the Exchange Act. Dkt. No. 70-2 ¶ 40. As discussed, Defendants do not assert a claim under Section 10(b) of the Exchange Act in the underlying arbitration, nor does Plaintiff identify with specificity any other Exchange Act violation pled. Moreover, it is entirely speculative that the FINRA arbitral panel would reach a conclusion with respect to a Section 10(b) violation and hold Plaintiff liable thereunder. In accordance with the "actual controversy" requirement of the DJA, a party seeking declaratory relief "must have suffered, or be threatened with, an actual injury traceable to the defendant" in order for the court to have subject matter jurisdiction over the claim. *Fox v. Int'l Conf. of Funeral Serv. Examining Bds.*, 242 F. Supp. 3d 272, 291 (S.D.N.Y. 2017) (quoting *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011)). In other words, "[t]he Declaratory Judgment Act requires immediacy and reality, and not speculation about future events." *Carr v. DeVos*, 369 F. Supp. 3d 554, 565 (S.D.N.Y. 2019). The injury Plaintiff complains of in Count IV is too speculative to present an "actual controversy" as required by the DJA.

Plaintiff claims from being forced to arbitrate is actual and not hypothetical. The injury is traceable to Defendants' conduct. But for the Statement of Claim, Plaintiff would not be forced to arbitrate. Finally, the injury Plaintiff alleges in being forced to participate in the FINRA arbitration can be addressed by the declaratory judgment relief that Plaintiff seeks. *See Citigroup Glob. Mkts., Inc. v. Abbar*, 761 F.3d 268 (2d Cir. 2014); *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164 (2d Cir. 2011).

This conclusion is unexceptional. In *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), the Supreme Court exercised jurisdiction over a case in which the plaintiff brokerage firm sought an injunction that would prohibit its customer from proceeding with an arbitration against it. And in *Abbar*, *VCG Special Opportunities Master Fund*, and *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210 (2d Cir. 2014), the Second Circuit held, without even asking the question, that a district court has the power to enjoin an arbitration to which the plaintiff did not consent. *See Abbar*, 761 F.3d at 274; *VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d at 174; *Golden Empire*, 764 F.3d at 213–14. Defendants have offered no persuasive reason why the same result should not follow here.[22]

## III. Personal Jurisdiction

Defendants next argue that this Court does not have personal jurisdiction over them. Dkt. No. 71 at 5–7.

---

[22] Defendants argue that Plaintiff voluntarily submitted to the arbitration by signing the Submission Agreement and by filing a counterclaim. Dkt. No. 71 at 5. Regardless whether Plaintiff submitted to arbitration (a merits question), there is no question that it is suffering a present "injury" from being forced to honor that submission and to arbitrate, that the injury is traceable to Defendants' conduct, and that a ruling by this Court would redress the harm. *See Safra Sec., LLC v. Gonzalez*, 764 F. App'x 125 (2d Cir. 2019) (summary order) (exercising jurisdiction when party signed submission agreement); *JPMorgan Chase Bank, N.A. v. Kraus*, 2025 WL 2390853 (S.D.N.Y. Aug. 18, 2025) (same).

Plaintiff argues that the Court has personal jurisdiction on three theories: (1) the Submission Agreement establishes consent to jurisdiction; (2) Jurado and Echeverria are subject to personal jurisdiction under C.P.L.R. 302(a)(1) because the FINRA arbitration stems from New York-centered business activity; and (3) Defendants' litigation conduct has subjected them to personal jurisdiction. Dkt. No. 75 at 11–14.[23]

To determine whether the exercise of personal jurisdiction is proper in a diversity case, the Court must conduct a two-part inquiry: first, the Court looks at whether there is a basis for personal jurisdiction under the laws of the forum state, and second, the Court must examine whether the exercise of personal jurisdiction comports with constitutional due process. *See Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). "'Where an agreement contains a valid and enforceable forum selection clause . . . it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process' as to the parties bound by that agreement." *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *6 (S.D.N.Y. Mar. 10, 2021) (quoting *Export–Import Bank of U.S. v. Hi–Films S.A. de C.V.*, 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010)). "Rather, assenting to '[a]n enforceable forum selection clause amounts to consent to personal jurisdiction.'" *Id.* (quoting *Farrell Lines Inc. v. Columbus Cello–Poly Corp.*, 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997)). To be enforceable, a forum selection clause must (1) be

[23] Plaintiff also argues that the Entity Defendants cannot assert due process rights under the Fourteenth Amendment because they do not have juridical existence. Dkt. No. 75 at 11–12.

reasonably communicated, (2) be mandatory, and (3) cover the claims and parties involved in the suit. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Banca Di Credito Cooperativo di Civitanova Marche e Montecosaro Soc. Cooperativa v. Small*, 852 F. App'x 15, 20 (2d Cir. 2021) (summary order). At the second step of the framework, courts "ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Phillips*, 494 F.3d at 383–84 (internal quotation marks omitted). A non-signatory can enforce a forum selection clause against a signatory when the non-signatory is "closely related" to a signatory. *See Vuzix Corp. v. Pearson*, 2019 WL 5865342, at *5 (S.D.N.Y. Nov. 6, 2019) (quoting *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d. Cir. 2013)). "'Generally speaking, courts have found parties to be so 'closely related' that enforcement of a forum selection clause is 'foreseeable' in two kinds of situations: where the non-signatory had an active role in the transaction between the signatories or where the non-signatory had an active role in the company that was the signatory.'" *Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*, 575 F. Supp. 3d 445, 460 (S.D.N.Y. 2021) (quoting *Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 336 (S.D.N.Y. 2018) (internal quotation marks omitted)); *accord Cuhadar v. Savoya, LLC*, 766 F. Supp. 3d 434, 448 (E.D.N.Y. 2025).

Plaintiff relies on Paragraph Four of the Submission Agreement, which states that the parties, including the arbitration claimants, "voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment." Dkt. No. 75 at

11; Dkt. No. 70-3 at 2. The Submission Agreement, however, cannot bear the interpretation that Plaintiff puts on it. The Submission Agreement requires a claimant to consent to the jurisdiction of a court which could enter a judgment against it. A party who has agreed to arbitrate in New York thus may not object to a court in New York entering judgment with respect to the arbitration. "[B]y agreeing to arbitrate in New York, a party is deemed to have consented to the jurisdiction of a New York court to compel arbitration . . . [or] to confirm the arbitral award." *Everything Yogurt Brands, LLC v. Bianco*, 2024 WL 3497757, at *3 (S.D.N.Y. July 22, 2024), *aff'd*, 2026 WL 2654127 (2d Cir. Sept. 9, 2026) (summary order). But that a claimant has consented to submit to the jurisdiction of any court of competent jurisdiction which may properly enter a judgment does not mean that it has consented to the jurisdiction of any court anywhere in the world so long as it is a "court of competent jurisdiction." The court must also have the power to enter judgment. And a court cannot enter judgment without having personal jurisdiction. "The [claimant] must either reside within the court's power or have acted in such fashion as to bring himself within the court's power before it may issue judgments over him." *Transatlantic Bulk Shipping Ltd. v. Saudi Chartering S.A.*, 622 F. Supp. 25, 27 (S.D.N.Y. 1985). In sum, by agreeing to arbitrate under FINRA's rules, neither Plaintiff nor Defendants agreed to subject themselves to the entry of judgment by a court anywhere in the United States. They agreed only to entry of judgment by a court which would have jurisdiction over them personally.

Plaintiff next argues that Defendants have voluntarily subjected themselves to personal jurisdiction by entering an unrestricted notice of appearance for all four Defendants and by accepting service of process. Dkt. No. 75 at 13–14. "[T]o preserve the defense of lack of personal jurisdiction, a defendant need only state the defense in its first responsive filing and need not articulate the defense with any rigorous degree of specificity." *Mattel, Inc. v. Barbie–*

*Club.com*, 310 F.3d 293, 307 (2d Cir. 2002). "In general, an appearing defendant that fails to timely assert the defense [of lack of personal jurisdiction] in its initial motion or pleading waives or forfeits the right to raise it in later stages of litigation, or when seeking relief from the judgment." *Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 117 (2d Cir. 2023).

A defendant may forfeit the defense of lack of personal jurisdiction by participating in pretrial proceedings without moving to dismiss for lack of personal jurisdiction despite clear opportunities to do so. *See Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 62 (2d Cir. 1999). "'The actions of the defendant [during the litigation] [may] amount to a legal submission to the jurisdiction of the court, whether voluntary or not.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011) (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704–05 (1982)); *accord Roberts v. Bennaceur*, 658 F. App'x 611, 616 (2d Cir. 2016) (summary order); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Younger Bros., Inc.*, 2001 WL 669042, at *4 (S.D.N.Y. June 13, 2001) (Lynch, J.); *Lively v. Wayfarer Studios LLC*, 2025 WL 2485438, at *1 (S.D.N.Y. Aug. 28, 2025). "[A] party may forfeit a right or defense by actively litigating other issues and forgoing the opportunity to litigate that right or defense." *Roberts*, 658 F. App'x at 616. "'To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking.'" *Flex Mktg. Grp., LLC v. Lapin*, 638 F. Supp. 3d 385, 391 (S.D.N.Y. 2022) (quoting *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92, 102 (2d Cir. 2016)).

Defendants have not forfeited (or waived) their personal jurisdiction defense. "[T]o preserve the defense of lack of personal jurisdiction, a defendant need only state the defense in

its first responsive filing and need not articulate the defense with any rigorous degree of specificity." *Mattel*, 310 F.3d at 307. Defendants took no action that would waive that defense. Defendants first appeared in this case at the hearing on the application for a TRO on June 1, 2026, only through a limited appearance. Dkt. No. 56 ¶ 38; Dkt. No. 61 at 2. Defendants have not participated without moving to dismiss for lack of personal jurisdiction. They moved to dismiss before their first pleading in response to the complaint. Defendants' notice of appearance and acceptance of service in lieu of Rule 4(f)/4(h)(2) service does not waive personal jurisdiction. The Federal Rules of Civil Procedure specifically provide that "[w]aiving service of a summons does not waive any objection to personal jurisdiction or to venue." Fed. R. Civ. P. 4(d)(5); *see also* Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment ("[T]imely waiver of service of a summons does not prejudice the right of a defendant to object by means of a motion authorized by Rule 12(b)(2) to the absence of jurisdiction over the defendant's person . . . ."); 4A Wright & Miller's Federal Practice & Procedure § 1092.1 (2026) ("Rule 4(d)(5) is careful to state that a timely waiver of formal service does not prejudice the right of a defendant to object to personal jurisdiction or venue; the only issues eliminated by granting the requested waiver are those involving the sufficiency of process or the method by which process is served."). At the first conference, the Court raised with Defendants' counsel whether Defendants "would be willing to waive service while retaining jurisdictional arguments so as to avoid the potential costs of service." Dkt. No. 61 at 12. That Defendants acceded to the request and thus avoided unnecessary cost and burden to the parties and to the Court does not mean that they waived their rights to object to personal jurisdiction.

"Absent consent, the Court might have general or specific jurisdiction over Defendants under N.Y. C.P.L.R. §§ 301 or 302, respectively." *Bianco*, 2024 WL 3497757, at *3. New York

C.P.L.R. 301, which speaks to general jurisdiction, requires the corporation to have "engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488, 490 (N.Y. 1990) (quoting *Laufer v. Ostrow*, 434 N.E.2d 692, 694 (N.Y. 1982)); *see Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016).[24] New York C.P.L.R. 302 sets out the requirements for specific jurisdiction, providing that:

> (a) . . . [A] court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . .

N.Y. C.P.L.R. 302(a).

Plaintiff argues that Defendants subjected themselves to personal jurisdiction under C.P.L.R. 302(a)(1) by investing in a private company managed from New York and commencing a FINRA arbitration against a New York member firm. Dkt. No. 75 at 12. The complaint, however, is bereft of allegations that Defendants, who are all foreign nationals or entities, took any action to transact business in New York. The allegations regarding New York in the SAC

[24] Plaintiff does not assert personal jurisdiction under C.P.L.R. 301.

are limited to that Silver Leaf is organized and operating in New York and has its principal office in New York, Dkt. No. 56 ¶¶ 10, 18, that Student Global is organized in New York, *id.* ¶ 23, and that the operative transaction documents are governed by the laws of the State of New York and contain a forum selection clause designating New York, *id.* ¶¶ 24–25; *see also id.* ¶ 17. Plaintiff affirmatively alleges that the transactions themselves "were entered into offshore by non-U.S. persons investing in offshore securities offerings." *Id.* ¶ 25. The SAC alleges that Jurado and Echeverria are Ecuadorian nationals residing outside the United States, *id.* ¶¶ 11–12, and that the Entity Defendants are Panamanian entities that may not even enjoy juridical existence, *id.* ¶¶ 13–14, 44–50.

To establish jurisdiction under N.Y. C.P.L.R. § 302(a)(1), Plaintiff must allege both that: (1) a defendant has "transacted business" in New York, and (2) the claim asserted arises from that business activity. *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 168 (2d Cir. 2015); *see Licci*, 732 F.3d at 168. While a non-domiciliary defendant need not be physically present in New York to "transact business," it must have engaged in "purposeful activity," for example, "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246–47 (2d Cir. 2007) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Section 302(a)(1) is a "'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction." *Kreutter v. McFadden Oil. Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988).

Plaintiff does not allege any action that Defendants took in relation to the investments in Student Global that took place in New York. While Defendants themselves might have been able to sue both Student Global and Plaintiff in New York because both are at home in New

York, *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 924 (2011), that does not mean that Plaintiff can haul these four foreign Defendants into a New York court simply because they invested in a New York company. *See Pinto v. Doskocil*, 1991 WL 207523, at *6 (S.D.N.Y. Oct. 3, 1991) (holding that "investment in a New York-based partnership without more does not subject a non-domiciliary limited partner to long-arm jurisdiction in New York" under § 302(a)(1)); *see also Narrative Ark Ent. LLC v. Archie Comic Publ'ns, Inc.*, 2017 WL 3917040, at *8 (S.D.N.Y. Sept. 5, 2017) ("It is well established '[t]he mere fact that a non-domiciliary enters into a contract with a company headquartered in New York does not establish the requisite minimum contacts, unless the purpose of the contract is to project the non-domiciliary into the New York market.'" (quoting *Spencer Trask Ventures, Inc. v. Archos S.A.*, 2002 WL 417192, at *4 (S.D.N.Y. Mar. 18, 2002))).

It does not help Plaintiff that Defendants signed investment agreements with a New York choice-of-forum clause. That clause would support personal jurisdiction on a consent basis in a claim brought by Student Global. But Plaintiff does not rely on the clause and disavows that it had any role in the transaction between Defendants and Student Global or any role in Student Global itself. *Lavazza*, 575 F. Supp. 3d at 460. Plaintiff also does not allege that Defendants took any action in relation to New York in connection with the arbitration. The arbitration itself is sited in Boca Raton, Florida and all activities apparently have taken place there.[25,26]

---

[25] The SAC relies on the forum selection clause in the Student Global subscription agreements. Dkt. No. 56 ¶¶ 24, 53.

[26] If anything, this would seem to suggest that Defendants may have subjected themselves to jurisdiction in Florida with respect to the arbitration proceedings, not in New York. *See Dr.'s Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction."); *cf. Vidaplan, S.A., Inc. v. Cipriani Int'l, S.A.*, 2006 WL 8461283, at *5 (S.D.N.Y. Aug. 7, 2006) ("[A]n agreement to arbitrate in New York creates an inference of consent to the New York court's enforcement of the award." (citation omitted)).

"Where a plaintiff fails to establish a *prima facie* case that a court has jurisdiction over a defendant, it is within a court's discretion whether to allow jurisdictional discovery." *Togut v. Forever 21, Inc.*, 285 F. Supp. 3d 643, 648 (S.D.N.Y. 2018) (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998)). Discovery is typically warranted where the plaintiff can make out a "colorable claim of jurisdiction." *Regenlab USA LLC v. Estar Techs. Ltd.*, 2017 WL 3601304, at *4 (S.D.N.Y. Aug. 17, 2017); *see also Parker v. Bursor*, 2024 WL 4850815, at *4 (S.D.N.Y. Nov. 21, 2024) ("A court has discretion to permit jurisdictional discovery where the plaintiff has raised a genuine issue of jurisdictional fact."). A court generally should allow a plaintiff "an opportunity to conduct discovery on . . . jurisdictional facts, at least where the facts, for which discovery is sought, are peculiarly within the knowledge of the opposing party." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004); *see also A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 575 (E.D.N.Y. 2011) ("Pre-motion discovery should be permitted where the facts necessary to establish personal jurisdiction . . . lie exclusively within the defendant's knowledge." (citation omitted)). But Plaintiff "bears the burden of showing necessity." *Molchatsky v. United States*, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013). Plaintiff here has identified no facts that would support jurisdictional discovery.

## IV. Failure to State a Claim[27]

Finally, and alternatively, Defendants move to dismiss the SAC for failure to state a claim for relief. Dkt. No. 71 at 11–24. Defendants argue that: (1) Count I (seeking a declaratory

[27] Defendants argue that even if Plaintiff has alleged a justiciable controversy within the meaning of Article III, the Court should decline to exercise jurisdiction under the DJA. Dkt. No. 71 at 7–11. The district court exercises equitable jurisdiction under the DJA and thus the obligation to hear a DJA action is permissive, not obligatory. *See Catlin Ins. Co. v. Champ Constr. Co.*, 2025 WL 2494291, at *8 (S.D.N.Y. Aug. 29, 2025). Among the considerations in determining whether to exercise jurisdiction under the DJA is whether the declaratory judgment sought will

judgment) that Defendants are not entitled to arbitration as customers fails to state a claim for relief because (a) Plaintiff has agreed to submit the arbitrability question to the arbitral panel through the Submission Agreement and (b) Plaintiff has failed to allege facts that Defendants were not "customers," *id.* at 12–14; (2) Count II (raising questions of a time bar) identifies a procedural requirement for the arbitral panel, *id.* at 14–15; (3) Count III (contending that the forum selection clause is binding and precludes arbitration) fails to state a claim because (a) Plaintiff agreed to submit this dispute to FINRA arbitration, (b) Plaintiff is not entitled to enforce the forum selection provision, and (c) the forum selection provision does not expressly displace FINRA arbitration, *id.* at 16–18; (4) Count IV (seeking a declaration that any federal securities claims that might be asserted in arbitration are impermissibly extraterritorial) fails to state a claim because the FINRA panel is the proper forum to address any such defense in the first instance, *id.* at 19–20; (5) Count V (challenging the Entity Defendants' juridical existence) fails to state a claim because (a) "[q]uestions concerning the identity, status, and capacity of parties participating in the arbitration may be addressed through the arbitration process" and (b) the failure of a registry search does not establish that an entity lacks legal or juridical existence, *id.* at 20–22; and (6) Count VI (challenging the Individual Defendants' authority to make claims on

serve a useful purpose in clarifying or settling the legal issues involved and would finalize the controversy and offer relief from uncertainty, and whether there is a better or more effective remedy than a declaratory judgment action. *See Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023); *see also Starr Indem. & Liab. Co. v. Exist, Inc.*, 2024 WL 503729, at *2 (2d Cir. Feb. 9, 2024) (summary order) (holding that the district court need not consider all of the *Admiral* factors where the omitted factors were "either irrelevant or deserve[d] less than 'significant weight'"). Defendants cite no authority for the proposition that an arbitral tribunal would provide a better or more effective remedy for Plaintiff where, as here, Plaintiff's claimed injury is being subject to the authority of the arbitral tribunal in the first place. Plaintiff's claim fails instead because Plaintiff has not alleged personal jurisdiction, and even if it had, it has failed to state a claim for relief.

behalf of the Entity Defendants) fails because it presents a question that is presumptively for the arbitrators, *id.* at 23–24.[28]

The Court has jurisdiction to determine "gateway" questions of whether a party is obligated to arbitrate unless the parties have clearly and unmistakably provided otherwise. *Howsam*, 537 U.S. at 83–84. Thus, in the absence of an agreement otherwise, a gateway question such as whether a party is bound by a given arbitration clause or whether "an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court." *Id.* at 84. Everything else being equal then, the Court would have authority to address Plaintiff's first count and to determine whether Defendants qualify as customers, *see Abbar*, 761 F.3d at 275–77, and to address Plaintiff's third count and determine whether the forum selection clause supersedes FINRA's mandatory arbitration rule, *see Golden Empire*, 764 F.3d at 215–17.

Everything else is not equal. Five months before filing this lawsuit, Plaintiff signed a Submission Agreement, agreeing to abide by any award rendered in the arbitration. Dkt. No. 70-3. Specifically, it agreed to submit "the present matter in controversy . . . to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure" and agreed to "abide by" any award rendered pursuant to the Submission Agreement. *Id.* Plaintiff subsequently presented to the FINRA panel all of the issues it now seeks to have this Court decide here. Dkt. No. 56 ¶ 32. Although the FINRA panel denied Silver Leaf's motion to dismiss in its entirety, it did so without prejudice, and each of those arguments remain available for Plaintiff before the arbitral panel. *Id.* ¶ 32; Dkt. No. 70-4 at 3.

[28] Counts VII and VIII seek injunctive relief. However, a request for injunctive relief is not an independent cause of action. *See Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 688 (S.D.N.Y. 2021). Those counts therefore are dismissed.

In *Safra Securities, LLC v. Gonzalez*, the Second Circuit confronted almost the identical claim to that presented by Plaintiff here. 764 F. App'x 125, 126 (2d Cir. 2019) (summary order). The plaintiffs filed suit in this Court seeking an injunction against a pending FINRA arbitration. *Id.* But the plaintiffs had signed a FINRA submission agreement identical to that here. The district court denied the injunction and dismissed the complaint, and the Second Circuit affirmed. After reciting that the question of "[w]hether parties have agreed to arbitrate a matter is fundamentally a question of contractual interpretation," the court concluded that the language of the submission agreement "constitute[d] a clear and unqualified agreement to arbitrate this case—or, in other words, to 'submit' [the claimant's] claims 'to arbitration' before FINRA." *Id.* at 125–26. The court rejected the plaintiff's claims that it "did not freely assent to the Submission Agreement it signed" and signed only because of "threats and blatant coercion of the FINRA case administrator." *Id.* at 126. The plaintiff "never explain[ed] why it could not have maintained its objections to FINRA's jurisdiction, refused to sign the Submission Agreement, and proceeded to the district court, as it later did." *Id.*

Both before and after *Safra*, courts in this Circuit and across the nation have "held, the FINRA Submission Agreement—to which [Plaintiff] agreed—'constitutes a valid, binding agreement to submit *all issues, including the threshold issue of arbitrability*, to the arbitration panel.'" *JPMorgan Chase Bank, N.A. & J.P. Morgan Sec. v. Kraus*, 2025 WL 2390853, at *3 (S.D.N.Y. Aug. 18, 2025) (quoting *First Montauk Sec. Corp. v. Menter*, 26 F. Supp. 2d 688, 689 (S.D.N.Y. 1998) and citing cases); *accord Abraham v. DeLeeuw*, 2010 WL 11595855, at *1 (C.D. Cal. Mar. 22, 2010) (holding that the FINRA Submission Agreement is an independent agreement to arbitrate); *Smith v. Bartolini*, 2003 WL 21148940, at *8–9 (N.D. Ill. May 14, 2003) (same); *Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339, 1342 (11th Cir. 1998) (same);

*Fisher v. Wheat First Sec., Inc.*, 62 F. App'x 472, 475 (4th Cir. 2003) (same); *Traderight Sec., Inc. v. Kirschman*, 2011 WL 614090, *3 (N.D. Ill. Feb. 15, 2011) (same); *Gates v. Veravest Invs., Inc.*, 2004 WL 1173145, at *9 (D. Or. May 25, 2004) (same). All issues include the issue of whether Defendants are customers entitled to invoke FINRA's mandatory arbitration rule, *see Kraus*, 2025 WL 2390853, at *3, as well as whether the forum selection clause supersedes that rule, *see UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 645 (2d Cir. 2011) (concluding that "the enforceability of the forum selection clause at issue is a procedural question for FINRA arbitrators, not the courts, to decide in the first instance"). It also includes questions such as whether Defendants' claims are time-barred, whether Defendants have legal capacity or the Individual Defendants can act on behalf of the Entity Defendants, and whether *Morrison* precludes Defendants' arbitral claims. *See Howsam*, 537 U.S. at 85. It is no answer that Plaintiff felt compelled to sign the Submission Agreement. Plaintiff "could have sought emergency relief from this Court before" it signed the Submission Agreement. *Osaic Wealth, Inc. v. Ambrose*, 2025 WL 1725209, at *5–6 (N.D. Ill. June 20, 2025) (denying motion for a preliminary injunction).

## CONCLUSION

Plaintiff's complaint is dismissed with prejudice and without leave to amend. Because all claims have been dismissed, Plaintiff's motion for a preliminary injunction is denied as moot. *See, e.g.*, *Principle Homecare, LLC v. McDonald*, 2025 WL 622876, at *17 (S.D.N.Y. Feb. 26, 2025) ("Having dismissed the entirety of Plaintiffs' complaint . . . the Court finds Plaintiffs' motion seeking a preliminary injunction must be denied as moot."), *aff'd*, 158 F.4th 326 (2d Cir. 2025); *Jeannot v. New York State*, 762 F. Supp. 3d 217, 240 (E.D.N.Y. 2025) (collecting cases); *Word v. Croce*, 169 F. Supp. 2d 219, 222 (S.D.N.Y. 2001).

The Clerk of Court is respectfully directed to enter judgment for Defendants dismissing Plaintiff's complaint with prejudice, to close all open gavels, and to close this case.

SO ORDERED.

Dated: October 13, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge